IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

TONY B. CLAY,

    Plaintiff,

v().                                                                   Civil Action No. 5:12-cv-92

CONSOL PENNSYLVANIA COAL
COMPANY LLC, a foreign limited liability
Company and subsidiary of CONSOL
ENERGY, INC., McELROY COAL
COMPANY, a foreign corporation
and subsidiary of CONSOL ENERGY,
INC., and CONSOL ENERGY, INC.,
a foreign corporation,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT McELROY COAL COMPANY TO SERVE COMPLETE ANSWERS TO INTERROGATORIES AND TO RESPOND FULLY TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

I. Background and Procedural History

Plaintiff is an African-American male hired by one or more of the Defendants on August 10, 2009 as an "Operations Trainee/Probationary Employee" commonly called an OP-T. Plaintiff entered into a written employment agreement with Defendant Consol PA dated August 10, 2009. Amended Complaint, Ex. 3 (Doc. 17). From August 10, 2009 until his termination in June 2010, Plaintiff worked as an OP-T for Defendants at the McElroy Mine in Marshall County, West Virginia.

On June 9, 2010, Plaintiff was terminated for allegedly sleeping on the job. On March 1, 2011, Plaintiff filed a claim with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") charging Defendant McElroy with discriminati in violation of Title VII of

1

the Civil Rights Act of 1964. Before the EEOC, Plaintiff charged that Defendant McElroy discriminated against him when it fired him; that prior to his termination he had been denied a promotion due to his race; and that Defendants subjected him to a hostile work environment. On April 29, 2011, Defendants answered Plaintiff's charge to the EEOC as "Consol Pennsylvania Coal Co. d/b/a McElroy Coal Co., a wholly-owned subsidiary of CONSOL Energy, Inc. ("CONSOL")". On April 12, 2012, the EEOC found reasonable cause to exist that "Consol Energy d/b/a Consol Pennsylvania Coal d/b/a McElroy Coal Company" discriminated against Plaintiff due to his race in violation of Title VII. Amended Complaint, Ex. 1 (Doc. 17).[1]

Plaintiff filed his original Complaint (Doc. 1) on June 21, 2012. Plaintiff filed an Amended Complaint (Doc. 17) on September 17, 2012. For his Amended Complaint, Plaintiff has pleaded claims against each Defendant for racial discrimination and harassment in violation of Title VII (Counts I and II), age discrimination in violation of the Age Discrimination in Employment Act (Count III), wrongful termination in violation of the West Virginia Human Rights Act (Count IV), retaliation (Count V), intentional or reckless infliction of emotional distress (Count VI), breach of contract (Count VII), violation of the West Virginia Wage Payment and Collection Act (Count VIII), and civil conspiracy (Count IX). On October 1, 2012, Defendants moved to dismiss Count III – IX of the Amended Complaint as to all Defendants.

---

[1] Defendants' contention in discovery that Consol PA and McElroy are distinct companies and that only the latter employed Plaintiff contradicts both their representations to the EEOC as wells as defense counsel's initial representations to Plaintiff's counsel. On April 16, 2012, Attorney Steven M. Reinsel wrote to Plaintiff's counsel Patrick Casey to advise that he represented "Consol Pennsylvania Coal Co. d/b/a McElroy Coal Co's [sic] (Respondent)" with regard Plaintiff's EEOC charge. Amended Complaint, Ex. 2 (Doc. 17).

Defendants' bogus claim that Consol Energy was not the Plaintiff's employer was effectively laid to rest by the recent discovery, amidst 40,000 documents recently dumped on Plaintiff's counsel, of an email from Mark Hrutkay, Consol Energy's Director of Human Resources, to Jason Adkins dated April 15, 2010. In this email Hrutkay helpfully explained to Mr. Adkins that "If we are in a pinch at Shoemaker for blackhats these [OPTs] can be considered. OPTs belong to the company not a mine." EXHIBIT A.

Defendants Consol PA and Consol Energy (but not Defendant McElroy) also moved to dismiss Plaintiff's claims under Title VII (Count I and II) contending that Plaintiff failed to exhaust his remedies by charging Consol PA and Consol Energy before the EEOC prior to bringing this action. Defendants' Motion to Dismiss (Doc. 18) is pending before the Court.[2]

On December 4, 2012, the Court entered a Scheduling Order (Doc. 29) establishing a July 2, 2013 discovery deadline and setting this case for jury selection on October 16, 2013. Defendants have been largely uncooperative and obstructive throughout the discovery phase of this action. The Plaintiff has successfully sought the Court's assistance on three prior occasions to compel the Defendants to fulfill their responsibilities under the discovery rules. *See generally* Doc. 48, Doc. 113 and Doc. 114.

## II. Discussion

A. Scope of Permissible Discovery

Unless otherwise limited by the Court, Fed. R. Civ. P. 26(b)(1) permits a party to –

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"[T]he discovery rules are given 'a broad and liberal treatment.' " *Nat'l Union, 281 Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc.,* 967 F.2d 980, 983 (4th Cir.1992) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). "A court

---

[2] By letter dated May 1, 2013, Judge Stamp issued a letter (Doc. 126) advising the parties of his tentative rulings. The letter appears to have been directed at the efforts of Consol Energy and Consol PA to delay responding to discovery until the Court had ruled on Defendants' motion to dismiss. By his letter, Judge Stamp effectively advised defendants that they would still be in the case even after he formally rules on the motion to dismiss.

must strike a balance between the broad scope of the rules of discovery and the discovery of relevant evidence that is ultimately deemed admissible or inadmissible at trial. The test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence." *Miller v. Pruneda*, 236 F.R.D. 277, 280 (N.D.W.Va. 2004).

> Information must be, at a minimum, relevant to be discoverable. Relevance for discovery purposes is defined more broadly than relevance for evidentiary purposes. Information is relevant, for discovery purposes, if it "bears on, or ... reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Although "the pleadings are the starting point from which relevancy and discovery are determined ... [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information." Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes. Therefore, courts broadly construe relevancy in the context of discovery.

*Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (J. Broadwater).

B. <u>Disputed Discovery</u>

    1. <u>Interrogatory No. 7</u>. Plaintiff seeks an Order of this Court compelling Defendant McElroy to fully answer Interrogatory No. 7.[3] For this interrogatory, Plaintiff seeks to uncover the extent to which McElroy and its employees (not counsel) have preserved and identified discoverable documents. The impetus for this interrogatory is the fact that that before the EEOC in 2011, and in their initial disclosures in December 2012 and in their

---

[3] On June 25, 2013, in advance of the filing of this motion the Magistrate Judge Seibert issued an <u>Order Granting in Part Defendants' Motion for Protective Order</u> (Doc. 236). By this Order, Defendant McElroy has been ordered to produce a Rule 30(b)(6) witness "to testify to the kinds of documents subject to litigation holds, and the specific actions taken," to produce a privilege log of all materials withheld on attorney-client and work product grounds; and to produce the purported privileged records for *in camera* review. As a result of Judge Seibert's Order, the 30(b)(6) deposition to be conducted on June 25, 2013, may render moot, in whole or part, Plaintiff's motion to compel as to this specific interrogatory.

4

responses to Plaintiff's first requests for production of documents in January 2013, McElroy identified and produce a single email communication pertaining to Tony Clay. In a conference call in March 2013, counsel for the Plaintiff's questioned McElroy's counsel and expressed their disbelief that only one email exists pertaining to Tony Clay, his claims while employed and his termination. McElroy's counsel advised that was just how Consol does business.

McElroy's counsel's claim that only one email existed was unsatisfactory. Interrogatory No. 7 was prepared to specifically put the defendants on notice as to their discovery obligations and to test them as to whether they had fulfilled those obligations. McElroy's counsel has recently served supplemental document productions containing dozens of emails pertaining to Tony Clay.

For its supplemental response, McElroy has partially responded to Plaintiff's interrogatory by advising that "in March 2011 all emails sent and received by Jason Adkins, Jonathan Pritts, Kurt Salvatori, and Mark Hrutkay were preserved." However, in the very next sentence, McElroy is intentionally vague concerning the timing of its further efforts when it states that –

> Moreover, steps were taken to preserve all emails sent and received by Bart Hylta, Donald Harvey, Donna Spec, Eve Flaherty, Gregg Dixon, Justin Griffith, Ken Harvey, Mark Courtney, Mark Fudala, Michael Sikora, Richard Hannan, Richard Mehler, Roger King, Eric Lipinski and Tracy O'Lare.

McElroy has intentionally chosen to withhold the dates as to when these additional steps were taken, which is specifically requested. Plaintiff is entitled to know whether <u>and when</u> the Defendants' have fulfilled their legal obligations to preserve evidence. Further, the Defendants have moved to extend all deadlines in this case by 60 days. To support this requested extension, Defendants cite the discovery of "150 gigabytes" of documents and data

which needs to be combed prior to production. The Defendants have furnished no explanation as to why these documents weren't turned over sooner. Plaintiff and the Court are entitled to know whether the extension sought is necessitated by the Defendants' failure to timely perform their duties.

2. <u>Interrogatory No. 17</u>. Had he not been terminated in June, 2010, Tony Clay would almost certainly been promoted to the position of section supervisor trainee a week later. The section supervisor trainee position would have entitled him to a raise in salary and would have been a stepping stone to further promotion.

By this interrogatory, Plaintiff asks McElroy to identify the names of all section supervisor trainees since January 1, 2004 (five years prior to his hiring), who received a promotion, the positions to which they were promoted and the length of time it took to be promoted. The requested information is clearly discoverable and goes to Plaintiff's damages. Specifically, Plaintiff should be permitted to show both the likelihood of further promotion and how long (on average) it would have taken to receive promotion to a higher paying position.

Defendant's supplemental response seems to be intentionally obtuse as to the why this information is discoverable.

3. <u>Request No. 7</u>. Originally Plaintiff sought the files of all sixty-nine (69) salaried production personnel which he could identify since 2009 who have been hired or received a promotion (including his own file) along with the files of two hourly black employees. Plaintiff has advised defense counsel that all health-related information and personal

identifiers (e.g. social security numbers) should be purged before the requested files are produced.

All of the requested files, which are likely to discoverable contain information concerning the training, qualifications, workplace achievements and workplace demerits, of similarly situated, non-minority production personnel with whom Plaintiff competed for promotion. This information is clearly calculated to lead to the discovery of information evidence which may support the Plaintiff's allegations that (1) he was passed up for promotion due to his race, and (2) Defendants' stated reason for his termination was a pretext. The personnel files of the two black hourly and one black salaried employees is calculated to lead to the discovery of evidence admissible on plaintiff's hostile work environment claim.

For purposes of this motion to compel, Plaintiff only seeks the personnel files of following 22 individuals:

(a) <u>OPTs (6) promoted or demoted on March 1, 2010 ahead of Plaintiff</u> – Richard Contraguerro, Daniel Bonar, Donald Avery, Jason Roth, David DiNardo, and Chancellor Taylor;

(b) <u>OPTs (12) promoted or demoted on or about June 14, 2010 approximately one week after Plaintiff's termination</u> – Gary Misenhelder, Richard Mehler, Dennis Jones, Scott Turley, Brian Hennebert, Richard Blake, Albert Postelwait, James McFeely, Kelvin Girty, Clifford Ward, Kent Price, and Kurtis Price;

(c) <u>Black McElroy personnel (3) during time of Plaintiff's employment</u> – Jesse Avery[4], Deborah Jordan and Mark Borum; and

---

[4] There appears to be a factual dispute as to whether Jesse Avery is black. Consol claimed he was to the EEOC. However, numerous Consol documents produced in discovery in this action identify him as white or Caucasian.

(d) Tony Clay.[5]

### III. Conclusion

For all of the foregoing reasons, Plaintiff requests the Court to enter an order compelling Defendant McElroy Coal Company to fully answer Interrogatory Nos. 7 and 17 to Plaintiff's First Set of Interrogatories to McElroy Coal Company and to fully respond and produce documents in response to Requests for Production No. 7 to Plaintiff's Third Set of Requests for Production of Documents to McElroy Coal Company. Plaintiff further requests that he be awarded his reasonable expenses, including attorneys' fees, in this matter.

TONY B. CLAY,
Plaintiff.

By: ___/s/ D. Kevin Coleman___
Counsel for Plaintiff

Patrick S. Casey (W. Va. Bar #668)
Sandra M. Chapman (W. Va. Bar #701)
D. Kevin Coleman (W.Va. Bar #6018)
CASEY & CHAPMAN, PLLC
1224 Chapline Street – Suite 101
Wheeling, WV 26003
(304) 231-2405
(866) 296-2591 (Fax)

---

[5] On June 25, 2013, in shortly before the filing of this motion, the Magistrate Judge Seibert issued an Order Granting in Part Defendants' Motion for Protective Order (Doc. 236). By this Order, Defendant McElroy has been ordered to produce the personnel files "of all OPTs and foreman trainees at the McElroy mine from the date of Plaintiff's hiring until one year after his termination, excluding financial, medical and personal…." Judge Seibert's order should result in the production of all personnel files now being sought except for those of the three black employees working at McElroy mine at the same time as Plaintiff: Jesse Avery, Deborah Jordan and Mark Borum. With the exception of the files for these three individuals, which are still sought, Plaintiff's motion to compel as to this request should be moot.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT McELROY COAL COMPANY TO SERVE COMPLETE ANSWERS TO INTERROGATORIES AND TO RESPOND FULLY TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS** was served upon counsel of record by electronic filing this 25th day of June, 2013:

David J. Delfiandra
Richard Cromer
David E. Renner
Leech, Tishman, Fuscaldo & Lampl
525 William Penn Place, 30th Floor
Pittsburgh, PA  15219

William A. Kolibash
Phillips, Gardill, Kaiser & Altmeyer
61 – 14th Street
Wheeling, WV  26003
*Counsel for Defendants*

TONY B. CLAY,
Plaintiff.

By:   /s/ D. Kevin Coleman
Counsel for Plaintiff

Patrick S. Casey (W. Va. Bar #668)
Sandra M. Chapman (W. Va. Bar #701)
D. Kevin Coleman (W.Va. Bar #6018)
CASEY & CHAPMAN, PLLC
1224 Chapline Street – Suite 101
Wheeling, WV  26003
(304) 231-2405
(866) 296-2591 (Fax)