IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


TONY B. CLAY,

     Plaintiff,

v.                                        Civil Action No. 5:12CV92
                                                        (STAMP)

CONSOL PENNSYLVANIA COAL
COMPANY, LLC,
a foreign limited liability
company and subsidiary of
Consol Energy, Inc.,
McELROY COAL COMPANY,
a foreign corporation and
subsidiary of Consol Energy, Inc.
and CONSOL ENERGY, INC.,
a foreign corporation,

     Defendants.


### MEMORANDUM OPINION AND ORDER CONFIRMING PRONOUNCED ORDER OF THE COURT DENYING DEFENDANTS' MOTION TO DISMISS THE ORIGINAL COMPLAINT AS MOOT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT[1]

I.  Background

On June 21, 2012, the plaintiff, Tony B. Clay, filed a complaint against the defendants, Consol Pennsylvania Coal Company, LLC ("Consol PA"), McElroy Coal Company ("McElroy"), and CONSOL Energy, Inc. ("CONSOL"). The plaintiff's complaint contains nine separate counts. In his complaint, the plaintiff specifically

-------------------------------------------------------------

[1]On May 1, 2013, a letter was issued to the parties indicating the tentative rulings of this Court regarding the defendants' motion to dismiss (ECF No. 18). This order sets forth the ruling in more detail.

alleges a hostile work environment claim, a race discrimination claim, an age discrimination claim, a wrongful termination claim, a retaliation claim, an intentional or reckless infliction of emotional distress claim, a breach of employment agreement claim, a claim for the violation of West Virginia's Wage Payment and Collection Act ("WPCA"), and a civil conspiracy claim. As relief, the plaintiff seeks compensatory damages, punitive damages, and attorneys' fees.

After the plaintiff filed his complaint, the defendants filed a motion to dismiss. In response to the motion to dismiss, the plaintiff filed an amended complaint. Thereafter, the defendants filed a motion to dismiss the amended complaint. In the motion to dismiss the amended complaint, the defendants argue: (1) the age discrimination count and the retaliation count should be dismissed for a failure to exhaust Age Discrimination in Employment Act's ("ADEA") administrative remedies; (2) the wrongful termination in violation of the West Virginia Human Rights Act ("WVHRA") count and the retaliation count should be dismissed for a failure to conform to the requirements of bringing a claim under the WVHRA; (3) the intentional or reckless infliction of emotional distress count is barred by the statute of limitations; (4) the breach of employment agreement count facially fails to state a claim upon which relief can be granted; (5) the breach of employment agreement fails to state a claim against defendants McElroy and CONSOL because they

were not parties to the employment agreement; (6) the violation of the West Virginia Wage Payment and Collection Act ("WPCA") count fails to state a claim because the plaintiff cannot demonstrate that the defendants failed to pay him any wages owed to the plaintiff; (7) the civil conspiracy count fails to state a claim because the plaintiff has failed to allege that two or more persons conspired to harm the plaintiff; (8) the civil conspiracy count is preempted by the WVHRA; and (9) the plaintiff's hostile work environment, race discrimination, ADEA, and retaliation counts should be dismissed for a lack of subject matter jurisdiction.

The plaintiff responded arguing: (1) the plaintiff did exhaust his remedies under the ADEA as to the ADEA and retaliation counts; (2) as to the plaintiff's wrongful termination count and retaliation count, the plaintiff is deemed to have timely filed his complaint with the West Virginia Human Rights Commission ("WVHRC"); (3) as to the plaintiff's intentional or reckless infliction of emotional distress count, the defendants' unlawful and tortious conduct continued beyond the plaintiff's discharge; (4) based on the plaintiff's allegations that he was discharged for unlawful and discriminatory reasons, the plaintiff has stated a claim for breach of his employment agreement; (5) the defendants were the "joint employer" of the plaintiff for purposes of the employment agreement; (6) the defendants' failure to remit the plaintiff's termination payment required under his employment agreement is a

3

violation of West Virginia's WPCA; (7) the plaintiff did not fail to state a claim for civil conspiracy as each defendant is a "person" capable of entering into a civil conspiracy; (8) the plaintiff's civil conspiracy count is not preempted by the WVHRA; and (9) this Court has subject matter jurisdiction over the plaintiff's hostile work environment, race discrimination, ADEA, and retaliation counts because he has exhausted his remedies before the Equal Employment Opportunity Commission ("EEOC").  The defendants filed a reply addressing the plaintiff's arguments.

For the reasons stated below, this Court denies the defendants' motion to dismiss the plaintiff's original complaint as moot and grants in part and denies in part the defendants' motion to dismiss the plaintiff's amended complaint.

## II.  <u>Applicable Law</u>

A.  <u>Motion to dismiss for failure to state of a claim</u>

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true.  <u>Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc</u>, 591 F.3d 250, 255 (4th Cir. 2009).  However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  This Court also declines to consider "unwarranted

4

inferences, unreasonable conclusions, or arguments." <u>Wahi v.</u>
<u>Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n.26 (4th Cir.
2009).

It has often been said that the purpose of a motion under Rule
12(b)(6) is to test the formal sufficiency of the statement of the
claim for relief; it is not a procedure for resolving a contest
about the facts or the merits of the case.  5B Charles Alan Wright
& Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed.
1998).  The Rule 12(b)(6) motion also must be distinguished from a
motion for summary judgment under Federal Rule of Civil Procedure
56, which goes to the merits of the claim and is designed to test
whether there is a genuine issue of material fact.  <u>Id.</u>  For
purposes of the motion to dismiss, the complaint is construed in
the light most favorable to the party making the claim and
essentially the court's inquiry is directed to whether the
allegations constitute a statement of a claim under Federal Rule of
Civil Procedure 8(a).  <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough
facts to state a claim to relief that is plausible on is face.'"
<u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (quoting
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "Facial
plausibility is established once the factual content of a complaint
'allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.'" <u>Nemet Chevrolet,</u>

591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

B.  Motion to dismiss for lack of subject matter jurisdiction

The Federal Rules of Civil Procedure provide that, prior to filing a responsive pleading, a defendant may challenge the district court's subject matter jurisdiction over the claims brought against it by filing a motion to dismiss under Rule 12(b)(1). The federal district courts are courts of limited jurisdiction, and may only hear cases over which they have been granted jurisdiction either by statute or by the Constitution. When a defendant brings a motion under Rule 12(b)(1), a court must dismiss the case against it if the court finds that it "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Once subject matter jurisdiction has been challenged, it is the plaintiff's "burden of proving that subject matter jurisdiction exists." Evans v. B. F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Further, because subject matter jurisdiction cannot be waived by the court or by the parties, and if lacking, renders the district court wholly unable to rule on any matter in controversy, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court "may refer to

6

evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, F. & P. R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

### III. Discussion

A. Failure to exhaust ADEA remedies

The defendants first argue that this Court should dismiss Count III, which alleges discrimination based on the plaintiff's age because the plaintiff failed to exhaust his administrative remedies under the ADEA. The defendants also argue that based on this failure to exhaust, Count V should be dismissed insomuch as it concerns retaliation based in violation of the ADEA. The plaintiff contests this argument and alleges instead that the plaintiff did in fact properly exhaust his administrative remedies under the ADEA.

Under the ADEA, a plaintiff must file a charge of discrimination with the EEOC prior to filing suit. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citations omitted). This charge must be filed either within 180 days after the alleged unlawful employment practice occurs, or within 300 days from such event "'when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" Id. (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 439 (4th Cir. 1998)). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's

contents." Id. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original compliant may be maintained" by the plaintiff in a subsequent lawsuit. Evans v. Technologies Applications & Service Co., 80 F.3d 954, 963 (4th Cir. 1996). A failure to file a proper charge and thus, the failure to exhaust administrative remedies concerning an ADEA claim, deprives federal courts of subject matter jurisdiction over the claim. Jones, 551 F.3d at 300.

The defendants argue that the charge filed with the EEOC did not contain any allegations of age discrimination. Further, the defendants state that the EEOC's determination regarding the charge and the notice of right to sue letter also did not mention any age discrimination claims. The plaintiff argues, however, that he did make claims of age discrimination in his initial charge. The plaintiff indicates that the statement that he "was passed over for a promotion due to [the assistant mine superintendent's] actions when other, less qualified white employees were promoted" supports the proposition that the defendants were put on notice of potential charges of age discrimination. The plaintiff also provides other statements from the EEOC's investigation that he feels put the defendants on notice of possible age discrimination claims as well.

This Court need only review a copy of the plaintiff's charge to determine that no such charges of age discrimination were ever

presented to the EEOC. <u>See</u> ECF No. 7 *1. The statement set out above, made by the plaintiff in his charge, which he believes provides notice of possible claims of age discrimination does not provide any such notice. Instead, it seems to be directed solely at a claim of race discrimination. Further, the charge contains an area where the claimant is to check a box concerning which type of charge he or she is making. The only box checked by the plaintiff was the box indicating that the plaintiff was asserting charges under Title VII. The ADEA box was left unchecked.

Not only were the original claims not stated in the initial charge or related to those in the original charge, they were also not developed by an investigation of the original complaint. After the EEOC undertook its investigation, the EEOC issued a determination and notice of right to sue letter. This letter only addresses the claims under Title VII that were made in the charge. Therefore, this Court finds that the plaintiff did fail to exhaust his remedies under the ADEA. As a result, this Court lacks subject matter jurisdiction over such claims and must grant the motion to dismiss as to Count III and Count V insomuch as it relates to a claim under the ADEA.

B.   <u>Failure to conform to the requirements of the WVHRA</u>

The defendants next contend that Count IV, which alleges wrongful termination in violation of the WVHRA, and Count V, which concerns, in part, retaliation in violation of the WVHRA, should be

dismissed for a failure to satisfy the requirements of bringing a claim under the WVHRA. Specifically, the defendants contend that the plaintiff failed to comply with the applicable statute of limitations for bringing claims under the WVHRA. The plaintiff, however, asserts otherwise. The plaintiff alleges that by filing his charge with the EEOC, he is deemed to have filed under the WVHRA with the WVHRC.

A plaintiff making claims of discrimination under the WVHRA with the WVHRC is required to file a complaint with the WVHRC "within 365 days after the alleged act of discrimination." Woodrum v. Thomas Memorial Hosp. Foundation Inc., 45 F. Supp. 2d 538, 540 (S.D. W. Va. 1999). A plaintiff, however, may also choose to file the complaint in a court instead of with the WVHRC. If a plaintiff chooses to do so, a two-year statute of limitations applies. Sesay v. Montgomery Ward & Co., Inc., 937 F. Supp. 563, 567-68 (S.D. W. Va. 1996) (citations omitted). The plaintiff must choose one of these two methods of bringing a claim under the WVHRA.

The plaintiff argues that based on West Virginia Code of State Rules § 77-2-3.9.d.4, the plaintiff is deemed to have filed his complaint with the WVHRC the same day that he filed his complaint with the EEOC. The Rule reads as follows: "Any complaint alleging acts which are unlawful under the West Virginia Human Rights Act which is filed with federal agencies having deferral/referral arrangements with the Commission, shall be deemed filed with the

10

Commission on the same day as the complaint was received by such federal agency." The defendants, however, argue that such argument is erroneous, as such argument would only apply if the plaintiff actually filed a complaint with the WVHRC, which the plaintiff does not allege that he has done.

This Court agrees with the defendants' analysis of the Rule. Nothing in the Rule relieves the plaintiff from his duty to actually file a complaint with the WVHRC or a complaint with the court alleging violations under the WVHRA. The latest dates provided by the plaintiff as to any alleged act of discrimination took place on the date of his termination, which was June 9, 2010. He did not file a complaint with the WVHRC by June 9, 2011, nor did he file a complaint with a court by June 9, 2012. Instead, the plaintiff filed his complaint in this Court alleging violations of the WVHRA on June 21, 2012. Therefore, because the plaintiff failed to comply with the applicable limitation periods concerning his claims under the WVHRA, this Court dismisses Count IV and Count V insomuch as it relates to retaliation in violation of the WVHRA.

C. <u>Intentional or reckless infliction of emotional distress statute of limitations</u>

The defendants argue that Count VI, which is the plaintiff's count alleging intentional or reckless infliction of emotional distress, should be dismissed because it is barred by the applicable statute of limitations. The plaintiff argues that it is

not barred by the statute of limitations because the defendants' wrongful conduct continued beyond the plaintiff's discharge.

Under West Virginia law, a two-year statute of limitations applies to a claim for intentional or reckless infliction of emotional distress.  W. Va. Code § 55-2-12(b); Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419, 432 (W. Va. 1998) (citations omitted).  As to when such statute of limitations begins to run, the West Virginia Supreme Court has held that "in claims for intentionally or recklessly inflicted emotional distress that arise from a termination of employment, the two-year statute of limitation . . . begins to run on the date of the last extreme and outrageous conduct, or threat of extreme and outrageous conduct, which precipitated the termination of employment."

The defendants argue that the last possible date on which the limitation period began to run was the date of the plaintiff's termination, June 9, 2010.  The plaintiff, however, contends that the wrongful conduct constituting the basis for this claim continues to this day.  Specifically, the plaintiff contends that the defendants' continued failure to conduct an investigation regarding his various charges of unlawful conduct and hostile work environment constitutes a continuation of their wrongful conduct.

As the defendants indicate, to establish a claim for intentional or reckless infliction of emotional distress, a plaintiff must show that the conduct complained of was "atrocious,

12

intolerable, and so extreme and outrageous as to exceed bounds of
decency." Travis, 504 S.E.2d at 425.   According to the West
Virginia Supreme Court, "[w]hether conduct may reasonably be
considered outrageous is a legal question, and whether conduct is
in fact outrageous is a question for jury determination." Hatfield
v. Health Mgmt. Assocs. Of W. Va., 672 S.E.2d 395, 404 (W. Va.
2008).   This Court finds that the plaintiff's claim concerning the
defendants' refusal to take seriously and investigate the
plaintiff's charges is not conduct that could reasonably be
considered so extreme and outrageous as to exceed bounds of
decency.   See Shawkey v. Lowe's Home Centers, Inc., No.
2:09-CV-01264, 2011 WL 1229784, at *12 (S.D. W. Va. Mar. 30, 2011)
(finding that the plaintiff's claim that an investigation
concerning his termination was completed in a "negligent or sub-par
fashion" was insufficient to establish his claim for intentional or
reckless infliction of emotional distress).   Therefore, the latest
possible date on which the limitation period could be said to have
started to run is June 9, 2010, the date of the plaintiff's
termination, as the plaintiff did not allege any later conduct
aside from that which this Court found insufficient to establish
the claim.   The plaintiff filed his complaint alleging intentional
or reckless infliction of emotional distress on June 21, 2012.   At
that time, the two-year statute of limitations had expired based on
the plaintiff's allegations as set forth in the complaint and

13

response to the motion to dismiss.  Therefore, this Court must dismiss Count VI.

D.  <u>Breach of employment agreement</u>

The defendants contend that Count VII, in which the plaintiff claims that the defendants breached the employment agreement, should be dismissed because the plaintiff was fired for cause, which is allowed for under the employment agreement. Alternatively, the defendants contend that Count VII should at least be dismissed as to defendants McElroy and CONSOL, as those defendants were not parties to the employment agreement.  The plaintiff contests these arguments first by arguing that the plaintiff was not fired for cause.  Further, the plaintiff argues that each defendant was a joint employer of the plaintiff, and therefore they were all parties to the agreement.

1.  <u>Termination "for cause"</u>

The subject employment agreement contains a choice of law section, which states that Pennsylvania law is to govern said agreement.  <u>See</u> ECF No. 17 Ex. 3 *8.  In order to establish a claim for breach of an employment agreement under Pennsylvania law, the plaintiff must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  <u>Hart v. Arnold</u>, 884 A.2d 316, 332 (Pa. Super. Ct. 2005).

14

The subject employment agreement contains a clause which allows for termination "for cause."  See ECF No. 17 Ex. 3 *3.  The defendants argue that the plaintiff was fired "for cause" and therefore, there was no breach of the employment agreement. Specifically, they state that the plaintiff was fired for sleeping while on the job, which is allegedly in violation of McElroy Coal Company's Employee Conduct Rules.  The plaintiff, however, contends that he was not fired "for cause."  Instead, the plaintiff argues that the defendants' proffered reason for firing him was a pretext and the defendants actually terminated his employment for discriminatory reasons, which is not a valid "for cause" reason for termination under the employment agreement.  This Court agrees with the plaintiff that, while the defendants may have provided a valid "for cause" reason for plaintiff's termination, this may not have been the actual reason for his termination.  Therefore, based on the defendants' "for cause" argument, the Court cannot dismiss the breach of the employment agreement count.

2.  Joint employers

Under Pennsylvania law, "one cannot be liable for a breach of contract unless one is a party to that contract."  Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 2005).  The defendants argue that McElroy and CONSOL were not parties to the contract, and that only Consol PA was a party to the contract.  The plaintiff argues that the defendants operated as a joint and

integrated employer when they terminated him and, thus, all defendants breached the employment agreement.

While the plaintiff cites cases for the proposition that the defendants are joint employers, none of the cited cases stand for the proposition that as joint employers, all defendants may be considered parties to the contract. See Deras v. Verizon, No. DKC 09-0791, 2010 WL 3038812 at *3-8 (D. Md. July 30, 2010) (applying joint employer doctrine to a Fair Labor Standards Act claim); Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 306 (4th Cir. 2006) (applying joint employer doctrine to Fair Labor Standards Act claim); Rowe v. Grapevine Corp., 456 S.E.2d 1, 3-4 (W. Va. 1995) (applying joint employer doctrine to West Virginia WPCA claim); Amoroso v. Marion County Comm'n, 105 S.E.2d 299, 303-03 (W. Va. 1983) (applying joint employer doctrine to West Virginia wage and hour law). Further, this Court has not located any authority on its own, which gives credence to the plaintiff's argument. See also Rho v. Vanguard OB/GYN Associates, P.C., No. CIV. A. 98-1673, 1999 WL 228993 at *4 (E.D. Pa. Apr. 15, 1999) (finding that the joint employer analysis under the Fair Labor Standards Act in the Third Circuit had "never been applied to breach of contract claims"). As such, although the defendants may be considered the plaintiff's joint employer for other purposes,[2] this Court finds

---

[2]This Court notes, that it is not in any way making a finding as to whether or not the defendants satisfy the requirements of the joint employer doctrine for any of the plaintiff's other counts.

that the doctrine does not apply to the plaintiff's breach of employment claim.

After reviewing the subject employment agreement, Consol PA was the only other party and signatory to the employment agreement aside from the plaintiff. See ECF No. 17 Ex. 3 *10. Therefore, because it is required that one must be a party to a contract to breach said contract and the joint employer doctrine does not make McElroy nor CONSOL parties to the employment agreement, this Court must dismiss Count VII as it pertains to McElroy and CONSOL.

E.   West Virginia's WPCA

The defendants argue that this Court should dismiss Count VIII, which alleges a violation of West Virginia's WPCA, because the plaintiff cannot demonstrate that the defendants failed to pay him any wages owed to him based on the WPCA. In Count VIII, the plaintiff seeks the payment of a termination payment which is agreed to in the employment agreement if the plaintiff is not fired "for cause." See ECF No. 17 Ex. 3 *4. This payment is equal to his base rate for a period of one month. Id. The defendants argue that the termination payment is not recoverable as it was not compensation for labor or services rendered by him, nor was it an accrued benefit because the plaintiff was fired "for cause." The plaintiff opposes this argument, however, and states that the termination payment is a fringe benefit owed to him and covered under West Virginia's WPCA.

The WPCA "is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." Mullins v. Venable,297 S.E.2d 866, 869 (1982).  The Act "controls the manner in which employees in West Virginia are paid wages." Gress v. Petersburg Foods, LLC, 592 S.E.2d 811, 814 (W. Va. 2003).  Under the WPCA, wages are specifically defined as:

. . .

> compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation . . . .  [T]he term "wages" shall also include then accrued fringe benefits capable of calculation and payable directly to an employee: Provided, That nothing herein contained shall require fringe benefits to be calculated contrary to any agreement between an employer and his employees which does not contradict the provisions of this article.

W. Va. Code § 21-5-1(c) (emphasis added).  The term fringe benefit is defined as "any benefit provided an employee or group of employees by an employer, or which is required by law."  W. Va. Code § 21-5-1(l).  "[W]hether fringe benefits have then accrued, are capable of calculation and payable directly to an employee so as to be included in the term "wages" are determined by the terms of employment and not by the provisions of W. Va. Code § 21-5-1(c)."  Syl. pt. 5, Meadows v. Wal-Mart Stores, Inc., 503 S.E.2d 676 (1999).

The plaintiff does not contest that the termination payment is not "compensation for labor or services rendered by an employee." Instead, he argues that the payment is a fringe benefit.  The

18

defendants' argument against the payment being considered a fringe benefit is that the plaintiff was fired "for cause" and therefore, did not accrue to the plaintiff.  As noted above, the termination payment is only owed to an employee who is fired for a reason other than "for cause."  This Court, however, previously decided above that the defendants' argument that the plaintiff was fired "for cause," did not suffice for this Court to grant the dismissal of the breach of employment agreement.  Whether or not the plaintiff was fired "for cause" is disputed, and the plaintiff has sufficiently plead that he was not fired for cause, but instead for discriminatory reasons.  If it is determined that he was not fired "for cause" at a later stage in this litigation, the plaintiff may at that time be entitled to the termination payment.  Therefore, this Court cannot dismiss Count VIII based on the defendants' argument that the fringe benefit did not accrue to the plaintiff.

F.   Civil conspiracy

The next argument provided by the defendants in support of their motion to dismiss concerns Count IX of the plaintiff's complaint, which alleges a civil conspiracy between the defendants to deprive the plaintiff of his protected civil rights.  The defendants argue that the three defendants are affiliated corporations, and as such cannot be co-conspirators.  The plaintiff argues in opposition, that this intracorporate immunity defense

19

should not apply outside of the antitrust context and should therefore not apply to this case.

Under West Virginia law, a civil conspiracy is defined as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Dixon v. American Indus. Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979).   In Copperweld Corp. v. Independence Tube Corp., the Supreme Court held that at least for purposes of § 1 of the Sherman Act, parent companies and their wholly-owned subsidiaries cannot conspire with one another. 467 U.S. 752, 771 (1984).   The Supreme Court stated in its reasoning for this holding, that the parent and subsidiaries

> general corporate actions are guided or determined not by two separate corporate consciousness, but one.  They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver.  With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder.

Id.

The plaintiff in this action argues that the intracorporate immunity defense is only applied in antitrust actions under the Sherman Act because such Act is concerned with regulating competition in the marketplace.  He explains that because a parent company and its subsidiaries are not in competition, their combining actions and objectives do not threaten the free market, which is the concern that the Sherman Act is meant to address.  In comparison, the plaintiff states that no similar rationale exists

20

for applying the defense in cases involving related corporations conspiring to deprive individuals of rights under state and federal civil rights laws.

This Court does not find the plaintiff's argument persuasive enough for it to decline to apply the defense in this instance. First, this Court notes that the plaintiff is incorrect in stating that the intracorporate defense is only applied in antitrust cases. See United States of America ex rel. Brooks v. Lockheed Martin Corp., 423 F. Supp. 2d 522, 528 (D. Md. 2006) (applying intracorporate immunity doctrine to a case involving a conspiracy claim under the False Claims Act against a government contractor and its wholly-owned subsidiaries); Kerns v. Range Resources-Appalachia, LLC, No. 1:10CV23 2011 WL 3753117 at *6 (N.D. W. Va. Aug. 23, 2011) (applying the intracorporate immunity defense when a plaintiff argued that a parent and subsidiary company conspired to commit fraud). Further, the explanation offered by the Supreme Court in Copperweld, that the actions of the parent and the subsidiary are guided by one consciousness, is applicable in this situation as well where the plaintiff is alleging that the defendants deprived him of his civil rights. The defendants were not acting as separate parties when terminating the plaintiff, but instead were acting with one consciousness. Therefore, this Court finds that the plaintiff cannot state a claim against the defendants for conspiracy to deprive him of his civil rights

because two separate parties were not involved in the alleged unlawful actions.[3]

G.   Subject matter jurisdiction

The defendants' final argument in their motion to dismiss concerns this Court's subject matter jurisdiction over the counts of the plaintiff's complaint which allege violations of Title VII and the ADEA.  As noted above, the plaintiff's ADEA claims are dismissed because this Court lacks subject matter jurisdiction over those claims because the plaintiff failed to exhaust his administrative remedies as it pertained to his ADEA claims.  Thus, this Court need only address this subject matter jurisdiction argument as it pertains to Counts I, VII and V insomuch as Count V alleges retaliation in violation of Title VII.

The defendants specifically argue that this Court lacks subject matter jurisdiction over the plaintiff's Title VII claims against defendants CONSOL and Consol PA because the plaintiff failed to name these defendants in the charge of discrimination filed with the EEOC.  The plaintiff, however, argues that CONSOL was included in the plaintiff's charge and both CONSOL and Consol PA appeared as respondents in their answer to the plaintiff's charge.  Further, the plaintiff notes that all defendants were

_____

[3]This Court notes that the defendants also argue that the plaintiff's conspiracy claim in Count IX should also be dismissed as preempted by the WVHRA.  Due to this Court dismissing the claim based on the intracorporate immunity defense, however, it need not address this argument.

22

charged by the EEOC with violating the plaintiff's rights under Title VII.

"Under Title VII, a civil action may be brought after administrative proceedings have ended or conciliation attempts have failed only 'against the respondent named in the [administrative] charge.'" <u>Alvarado v. Board of Trustees of Montgomery Community College</u>, 848 F.2d 457, 458 (4th Cir. 1988) (citing 42 U.S.C. § 2000e-5(f)(1)).  The United States Court of Appeals for the Fourth Circuit stated that two purposes are served by this naming requirement: (1) it provides notice to the party of the alleged violation; and (2) it provides an opportunity to secure voluntary compliance with the law.  <u>Id.</u> at 458-59.  The failure to name a defendant in the charge does not bar a subsequent suit if these purposes are "substantially met." <u>Vanguard Justice Soc., Inc. v. Hughes</u>, 471 F. Supp. 670, 687 (D. Md. 1979) (citations omitted). Further, because EEOC charges are usually made by lay persons, they "must be construed with utmost liberality." <u>Alvarado</u>, 848 F.2d at 460.

First, this Court notes that McElroy and CONSOL were named in the plaintiff's EEOC charge.  <u>See</u> ECF No. 25 Ex. 1 *1.  The only party the plaintiff failed to name in his charge was Consol PA. Although, while the plaintiff did fail to specifically name Consol PA in his EEOC charge, Consol PA still had notice of the alleged violation and it had an opportunity to voluntarily comply with the

law through the conciliation process.   This is evidenced by the defendants' response to the EEOC charge.   The first line of the response states as follows: "This firm represents <u>Consol Pennsylvania Coal Co.</u> d/b/a McElroy Coal Co., a wholly owned subsidiary of CONSOL Energy Inc. ("CONSOL") with respect to the above-referenced charge of discrimination filed by Tony Clay." ECF No. 25 Ex. 4 *1 (emphasis added).   Thus, if Consol PA's attorneys were responding to the EEOC charge, it is clear that they had notice of the charge and had an opportunity to comply with the law through the conciliation process.   Further, the determination letter issued by the EEOC specifically names all three defendants, which provides additional support to the proposition that the purposes of the naming requirement were met as to Consol PA.   See ECF No. 17 Ex. 1 *1.   Thus, based on this evidence as a whole, the purposes of the naming requirement were not comprised.   This Court finds there to be no reason to dismiss the Title VII claims against Consol PA based on a procedural error of a lay person that had no affect on the underlying purposes of the requirement.

## IV.   <u>Conclusion</u>

For the reasons stated above, the defendants' motion to dismiss the amended complaint as it relates to Count III, Count IV, Count V insomuch as it is related to retaliation claims brought under the ADEA and the WVHRA, Count VI, Count VII as it pertains to McElroy and CONSOL, and Count IX is GRANTED.   The defendants'

24

motion as it relates to Count I, Count II, Count V insomuch as it pertains to claims of retaliation brought under Title VII, Count VII as it pertains Consol PA, and Count VIII is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    July 3, 2013


                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE