IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TONY B. CLAY,

  Plaintiff,

v.                     Civil Action No. 5:12-cv-92

CONSOL PENNSYLVANIA COAL
CO., LLC, MCELROY COAL CO., &
CONSOL ENERGY INC.,

  Defendants.

## REPORT & RECOMMENDATION THAT PLAINTIFF'S MOTION SEEKING THE REVOCATION OF RICHARD CROMER'S PRO HAC VICE ADMISSION AND OTHER SANCTIONS BE DENIED, BUT RECOMMENDING PUBLICLY REPRIMANDING MR. CROMER FOR HIS CONDUCT AT PLAINTIFF'S DEPOSITION

### *I. INTRODUCTION*

> *Society at this time seems to be accepting a fundamental loss of common courtesy as a trend that accompanies the fast-paced existence most Americans now live. Perhaps instant communication, in which more information needs to be assimilated more rapidly, has rendered thoughtfulness nearly impossible. Perhaps it is simply the cynicism inherent in a society that values winning at all costs.*[1]

This case, or at least the actions between the parties, has deteriorated rapidly since its inception to a point that is unacceptable considering the candor and respectfulness required of officers of the federal courts. It has come to a point where Court intervention is necessary on an almost weekly basis, and the Court is even considering a more active role—as in an elementary educator in a classroom full of toddlers—in overseeing the discovery process to ensure this case moves forward, and does so in a manner that ensures adherence not only to the federal rules, but to the rules governing the conduct of

---

[1] WEST VIRGINIA OFFICE OF DISCIPLINARY COUNSEL, *Standards of Professional Conduct: Preamble*, *available at*: http://www.wvodc.org/ (hereinafter *Standards*).

attorneys. The instant dispute arises from a deposition of Plaintiff by Richard Cromer, Esquire, counsel for all Defendants. Plaintiff complains of several specific instances of conduct during this deposition, culminating in Mr. Cromer passively calling Plaintiff an "idiot." The Court issued an Order to Show Cause, which gave Mr. Cromer the opportunity to explain why his *pro hac vice* admission should not be revoked. Further, on July 11, 2013, the Court held a hearing for Mr. Cromer to explain the same.

## II. DISCUSSION

An attorney's *pro hac vice* admission to a federal court whose bar she is not a member was once considered granted and held by the grace of the court where it was sought. *See Belue v. Leventhal*, 640 F.3d 567, 576-78 (4th Cir. 2011) (citing *Johnson v. Trueblood,* 629 F.2d 302, 303 (3d Cir.1980). However, this cannot be the case in a practice of law that has become a national one. *Id.* Now, lawyers from other districts must be treated the same, and held to the same standards, as lawyers of the district where they are visiting. And while different districts and states might adopt different rules of professional conduct, the conduct in the instant case is so egregious that counsel for Defendant must be publicly reprimanded.

### A. The Conduct

The Court will first note that it recognizes that depositions are in their very nature adversarial, and that a deposition will not involve routine exchanges of pleasantries. However, there is still limitations on a lawyers conduct during a deposition, and a lawyer at a deposition should not engage in conduct that she would not engage in before a judge in a courtroom. Plaintiff complains of five specific instances of conduct during the deposition that he contends warrant sanctions, two of which the Court finds warrant a reprimand. First, in the record before the EEOC, there was an alleged conversation between Plaintiff and a supervisor, where the supervisor asked Plaintiff how he liked being in a separate locker room, to which Plaintiff responded that he goes to the supervisor locker room to see all the white

2

men showering because it makes him feel blessed. During the deposition, Mr. Cromer questioned Plaintiff as to this comment, which he surely had the right to do. After some evading, Plaintiff admitted that he was talking about the size of his penis. This should have been the end of this line of questioning; counsel wanted clarification and Plaintiff provided it. But it was not the end. Mr. Cromer went on to ask Plaintiff just how big his penis was, and continued to badger Plaintiff until he got an answer. There was absolutely no relevance in this questioning and can only be seen as an attempt to badger and humiliate Plaintiff.

The second incident is the most egregious. Mr. Cromer was questioning Plaintiff whether he considered himself blacker than some other individuals, and how one person can be blacker than another. Counsel for Plaintiff objected, calling the line of questioning silly. In response, Mr. Cromer said "[i]t is silly, and he's – he's the idiot that wrote it," referring to Plaintiff's writing to the EEOC. This tone and name calling has been seen before by Mr. Cromer in email exchanges with counsel for Plaintiff, where he calls Plaintiff a liar, drug addict, and alcoholic. But when the name calling makes its way to Plaintiff's ear first hand, the Court can only say that it is just plain wrong. In no instance should a lawyer ever call a party an idiot. Never.

**B. The Rules & Standards of Professional Conduct**

The Court will start with this Court's Local Rules, which provides that "[i]n all appearances, actions, and proceedings within the jurisdiction of this Court, attorneys *shall* conduct themselves in accordance with the Rules of Professional Conduct and the Standards of Professional Conduct adopted by the Supreme Court of Appeals of West Virginia, and the Model Rules of Professional Conduct published by the American Bar Association." LR GEN P 84.01 (emphasis added). These rules and standards as outlined provide only a floor, and the Court highly encourages attorneys to conform their conduct to the highest ethical standards. As such the Court "expects the highest standards of

3

professionalism, human decency, and considerate behavior toward others from lawyers." LR Gen P 84.02.

There are several Standards that go directly to the conduct outlined above. Standard I.A.1 provides that "[a] lawyer should treat all counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications. A lawyer should not, even when called upon by a client to do so, abuse or indulge in offensive conduct, disparaging personal remarks or acrimony toward other counsel, parties or witnesses." Standard I.B.10 provides that "[a] lawyer should not engage in any conduct during a deposition that would not be appropriate in the presence of a judge."

Courts around the country have fashioned varying sanctions for conduct during depositions, including monetary sanctions, admonishment, and censure. *See e.g. Carroll v. Jacques*, 926 F. Supp. 1282 (E.D. Tex. 1996) (sanctioning counsel for Defendant $500 for each time he called Plaintiff's counsel an idiot or ass); *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007) (censuring and admonishing attorneys); *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182 (E.D. Pa. 2008) (ordering attorney to pay, jointly and severally, fees incurred in a deposition); *Freeman v. Schointuck*, 192 F.R.D. 187 (D. Md. 2000) (ordering a letter of apology); *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987) (invoking 18 U.S.C. §1927 and the court's inherent power to impose monetary sanctions); *Van Pilsum v. Iowa St. Univ. of Sci. and Tech.*, 152 F.R.D. 179 (S.D. Iowa. 1993) (ordering a new deposition before a discovery master). These are only a few of the many examples and range in terms of conduct to profanity and name calling to wasting time by objecting and ordering a deponent not to answer.

Although not rising to the level of profanity and threats of violence of the infamous Joe Jamail, *see e.g. Paramount Comm. Inc. v. QVC Net.Inc.*, 637 A.2d 34, 53–54 (Del. 1993), Mr. Cromer's calling Plaintiff an idiot is not, by any stretch of the imagination, consistent with the professionalism, human

decency, and considerate behavior requested by this Court's Local Rules, and in fact falls far below it. The same can be said on his questioning Plaintiff about the size of his genitalia. Moreover, as the Local Rules note, lawyers are mandated to follow the Standards of Professional Conduct, several of the provisions of which are outlined above. Certainly calling someone an idiot is a disparaging personal remark discouraged by the Standards, and it is hard to fathom that Mr. Cromer would have called Plaintiff an idiot in the presence of a judge. Conduct such as this, which is characterized as "uncivil, abrasive, abusive, hostile, or obstructive impedes the fundamental goal of resolving disputes rationally, peacefully and efficiently, and tends to delay and often to deny justice." *Standards*, *supra* n.1. Accordingly, the Court finds it appropriate to publicly reprimand Mr. Cromer for his conduct during Plaintiff's deposition. Mr. Cromer is warned that if he ever engages in conduct of this sort again then the undersigned will recommend that his *pro hac vice* admission be revoked and that he never be able to practice in the United States District Court for the Northern District of West Virginia again.

### *III. CONCLUSION*

In sum, Mr. Cromer's personal feelings about this case and Plaintiff have obviously clouded his judgment on how to act appropriately. His conduct at Plaintiff's deposition is reprehensible, in violation of his oath as an officer of the federal courts, and in clear violation of this Court's Local Rules which mandate compliance with the West Virginia Standards of Professional Conduct. As such he should be publicly reprimanded for his conduct. Mr. Cromer should be placed on probation, in a sense, because any further conduct of this nature will lead the undersigned to recommend to the District Court that his *pro hac vice* admission be revoked, and that he never again be permitted to practice before the United States District Court for the Northern District of West Virginia.

Any party may, within fourteen [14] days of the filing of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis

5

for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

If the District Court adopts this recommendation, the Clerk of the Court is directed to transmit a copy of this Order to all counsel of record, and to the Disciplinary Board of the Supreme Court of Pennsylvania, District 4 Office, at Frick Building, Suite 1300, 437 Grant Street, Pittsburgh, Pennsylvania 15219.

**IT IS SO ORDERED**

DATED: July 22, 2013 /s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE