IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TONY B. CLAY,

    Plaintiff,

v.                                                                                                    Civil Action No. 5:12-cv-92

CONSOL PENNSYLVANIA COAL
CO., LLC, MCELROY COAL CO., &
CONSOL ENERGY INC.,

    Defendants.

**REPORT & RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS A SANCTION BE DENIED, AND ORDER THAT PLAINTIFF'S MOTION FOR SANCTIONS BE GRANTED IN PART AND DENIED IN PART**

## *I. INTRODUCTION*

To put it lightly, there has been a severe shortcoming by Defendants in this action during the discovery process. Not only have Defendants' resisted providing required information in initial disclosures and resisted previous discovery attempts by Plaintiff on an unfounded "we are not his employer" objection to discovery, but it has now come to light that Defendant did not even engage in a search for relevant electronically stored information (ESI) until April of this year—nearly ten months after this action was filed, and nearly two years after the EEOC investigation. And we are not talking about information that might have some tangential bearing on a lead to the discovery of admissible evidence, but emails that specifically discuss Plaintiff's employment at the mine, his termination, and emails about Plaintiff which he has classified as "racist." Surely these emails are relevant in an *employment* discrimination case alleging mistreatment based upon *race*, and should have been produced in response to Plaintiff's first set of discovery requests propounded back in December of 2012.[1] However, it is hard to produce something

---

[1] Plaintiff has included all of the discovery requests he made which he contends these emails would have been responsive to. The Court will not recite all of the requests, and will only find that these emails would have been responsive.

that Defendants have not even looked for. In fact, despite a litigation hold being placed on four email accounts—all human resource people at the mine or corporate office—in June 2011 when Plaintiff's EEOC complaint was filed, counsel for Defendants did not request any ESI from Defendants' IT department until April 2013. At or around that same time, Defendants placed holds on several other employees' email accounts. Again, these were not people with some obtuse connection to the case, but included the people that actually fired Plaintiff, including the superintendent at the mine that signed the firing paper.

The logical question is: why was this not done? The only proffer by Defendants is that there was a minor miscommunication between counsel and a human resource (HR) manager, who they allege was responsible for collecting materials responsive to Plaintiff's discovery requests. This miscommunication, as stated at the hearing on Plaintiff's motion for sanctions, is that counsel did not specifically tell the HR manager to gather emails. Rather, counsel operated under the assumption that emails would be searched in his directive to find responsive materials. In addition to this failure to search for responsive ESI, Defendants operated a suspicious course while other discovery was playing out. For instance, during a May deposition of the aforementioned HR manager, counsel for Plaintiff asked whether there were any emails exchanged regarding Plaintiff.[2] In response, the witness stated that there were emails but they were given to counsel. Counsel stood silent and the deposition continued. This establishes several things: first, Defendants knew there were relevant emails; second, Defendants had those emails in their possession; third, those emails were not given to Plaintiff, despite Defendants knowing they existed and having them in their possession; and finally, Defendants allowed the deposition to continue without Plaintiff having the benefit of the emails to question the witness about. This is just one instance of Defendants allowing a deposition to take place where there were, what the Court will classify as **highly relevant** documents,

---

2 This deposition was noticed by subpoena duces tecum, but counsel for Defendants instructed the employee deponent not to bring any documents that were company property.

without giving those documents to Plaintiff to use at the deposition.

Defendants now take the "we are where we are" stance and state that they have searched everything, will comply with the deadlines, and are ready to proceed.[3] In response to the late disclosures, Plaintiff has now filed a motion wherein he requests the following sanctions for abuse of the discovery process: (1) default judgment on liability; (2) all reasonable expenses associated with the prior depositions of six employees of Defendants; (3) permission to redepose these six employees at Defendants' expense; (4) permission to depose seven additional employees; (5) exclusion of Plaintiff's deposition at trial or in any motion; (6) denial of any effort to prolong this action; (7) precluding Defendants from conducting any further discovery; and (8) reasonable expenses associated with the instant motion.

On August 7, 2013, the Court held an evidentiary hearing and heard argument on the motion, where Plaintiff called the following witnesses: John Christian Savine, director of information technology at CONSOL; Jason Adkins, manager of human resources at the Ohio Valley operations of CONSOL; and David Renner, attorney for Defendants.[4] Plaintiff also presented several exhibits which he contends show that Defendants idly sat by and let discovery proceed all the while knowing that there were documents responsive and relevant to Plaintiff's claims. Defendant submitted one exhibit which showed the date a hold was placed on each employees' email account. Defendants also made several representations to the Court, including: (1) the email accounts of several individuals connected to Mr. Clay's employment decision were not searched until March 2013; (2) Jason Adkins was responsible for searching for documents, including emails, responsive to Plaintiff's discovery requests; (3) Mr. Adkins did not search

---

3 The Court will note that this representation was made by Defendants' new counsel in this action, who only recently took the lead in this case. However, acquiring new counsel does not erase past mistakes.

4 Defendants objected to Mr. Renner taking the stand, but the Court allowed a narrow inquiry because Defendants have asserted that there was a miscommunication between counsel and CONSOL as a defense to the late production of emails in this action. The Court construed this assertion as a limited waiver of the attorney client privilege under the advice of counsel defense exception to the privilege. *See* Nicholas v. Bituminous Cas. Co., 235 F.R.D. 325 (N.D.W.V. 2006). Accordingly, the Court allowed Plaintiff to very narrowly inquire about any discussion had between Mr. Renner and Jason Adkins regarding a search for emails.

for emails, and that an email search did not occur until the aforementioned March 13 date; (4) Mr. Adkins did not bring any emails to his deposition noticed by a subpoena duces tecum; and (5) some of those emails would have been responsive to outstanding discovery requests. Defendants also represented that they are willing to make the six previously deposed employees available for another deposition in Wheeling, and will pay for 2.5 hours of preparation time for those depositions. Further, that they are willing to allow depositions of the seven additional employees, but not at their expense.

## II. DISCUSSION

The Court will first note that a couple aspects of the requested relief have either been dealt with by this Court or the District Court. Specifically, this Court recommended denial of Plaintiff's prior motion for sanctions against Mr. Cromer for his conduct at Plaintiff's deposition wherein Plaintiff requested that the Court exclude the deposition of Plaintiff in any further proceedings. No objection was made to that recommendation, but it is in the District Court's hands now. Further, the District Court has denied a motion by Defendants' to extend the scheduling order in this action. However, the Court did modify the scheduling order to allow for further discovery.

Before discussing the remaining requests for relief, the Court will outline the available avenues for imposing sanctions. Federal Rule of Civil Procedure 37 provides sanctions for conduct abusive of the discovery process. In particular, and the only one relevant to the instant conduct, subsection (c) provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . the court, on motion and after giving an opportunity to be heard," can impose sanctions ranging from reasonable expenses, including attorney's fees, to rendering default judgment. FED. R. CIV. P. 37(c)(1)(A)–(C). In turn, Rule 26(a) deals with required initial disclosures, and Rule 26(e) requires supplemental disclosure to any initial discovery *or* previous response to a discovery request "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the

4

additional or corrective information has not otherwise been made known to the other parties during the discovery process." FED. R. CIV. P. 26(e)(1). Further, Rule 26(g) requires attorneys to make a reasonable inquiry before answering or objecting to discovery requests. If the Court finds improper certification, it "must impose an appropriate sanction," which "may include an order to pay the reasonable expenses, including attorney's fees." FED. R. CIV. P. 26(g)(3). If a party "impedes, delays, or frustrates the fair examination" of a deponent during a deposition, the court "may impose an appropriate sanction," including the reasonable expenses and attorney's fees incurred. FED. R. CIV. P. 30(d)(2).

Title 28 U.S.C. § 1927 gives the court the power to impose sanctions on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously," and provides that any counsel found to engage in such conduct may be required to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred." Finally, there is the Court's inherent power to sanction. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotes and cites omitted). However, "[b]ecause of their very potency, inherent powers must be excercised with restraint and discretion," with the primary aspect of their use being the "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45. With this framework for imposing sanctions in mind, the Court will now discuss the remaining relief requested by Plaintiff.

**A. Default Judgment**

Although a district court has wide discretion in imposing sanctions, "[w]hen the sanction involved is judgment by default, the district court's range of discretion is more narrow because . . . [it] is confronted

5

head-on by the party's right to a trial by jury and a fair day in court." *Mutual Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (internal quotes omitted). These "competing interests require the application of a four-part test: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Id.* The goal is to "insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." *Id.*

This is not the flagrant case where this harshest sanction should be imposed. First, although Defendants' actions certainly have some suspicion, the Court cannot reach a conclusion that Defendants acted in "bad faith and callous disregard for the authority of the district court and the Rules." *Id.* This is not the case where a party has looked over some documents and intentionally withheld them because they were unfavorable. Nor is it the case where a party has disobeyed orders of this Court. Rather, it appears clear that Defendants were just dilatory in participating in discovery, and did not even begin searching for this ESI until Plaintiff was on the brink of filing his second motion to compel. After the motions to compel were granted, it appears that Defendants have started an exhaustive effort to comply with this Court's Orders and meet their responsibilities under the Rules.[5] Further, although somewhat suspect that an attorney would place an HR manager at the forefront of gathering responsive materials, rather than engaging the IT department itself, Defendants aver that this failure to search for ESI was the result of a miscommunication between counsel and client. If true, it is further evidence that there was no bad faith

---

5 The Court will note that Defendants were compliant with other discovery requests propounded by Plaintiff, but resisted statistical information, and information concerning other employees. The problem with failure to search for ESI is of recent vintage.

in the lack of responsiveness to Plaintiff's discovery requests. Absent a finding of bad faith, judgment by default is not appropriate. *See Nat. Hockey League v. Metro. Hockey Club*, 427 U.S. 639 (1976) (per curium). Nonetheless, the Court will discuss the remaining *Mutual* factors.

Looking to the second factor, Plaintiff has certainly suffered some prejudice because Defendants failed to produce material that was clearly relevant, and necessary to engage in further discovery. However, given the extension of discovery and imposition of less drastic sanctions, most of this prejudice can be alleviated. Time is the only thing that cannot be replaced. Third, as this Court has noted in its prior Orders in this action, there certainly needs to be deterrence for this behavior. It is unacceptable to not search for electronically stored information, especially emails, in this day and age where most communication flows through these channels. Finally, less drastic sanctions can be effective and can reverse most of the prejudice suffered by Plaintiff. Namely, as will be discussed further, *infra*, Plaintiff will be able to redepose the six employees that they request at Defendants' expense. Further, Plaintiff may exceed the deposition limit imposed and depose the seven additional employees that they seek to depose, but at their own expense. Finally, Plaintiff will be entitled to the reasonable expenses, including attorneys' fees, associated with the bringing of the instant motion. In sum, Defendants actions do not warrant depriving them of their day in court before a jury. Accordingly, this Court **RECOMMENDS** that Plaintiff's motion for sanctions, as it requests default judgment, should be **DENIED**.

**B. The Depositions**

The depositions that Plaintiff seeks to retake, or take in the first instance, can be divided into two groups. First, there are the six employees of Defendants that Plaintiff has already deposed, but did not have certain discovery for the deposition. Second, there are the seven additional employees that Plaintiff seeks to depose for a first time, either because their names have only recently surfaced or their involvement in Plaintiff's employment only recently became known, or because they forewent deposing

7

those witnesses in the first instance to comply with the ten deposition limit per side in this action. Plaintiff shall be entitled to depose all of these witnesses, but Defendants will only foot the bill for the first set.

*1. The Six*

These six employees are Mark Courtney, Ken Harvey, Roger King, Mike Sikora, Jonathan Pritts, and Jason Adkins. As noted, these individuals were previously deposed, either in their individual capacity or as Rule 30(b)(6) representatives for the corporate Defendants. And, as discussed, Defendants allowed these depositions to take place without providing Plaintiff with much of his requested discovery, all the while knowing that the discovery existed, and in particular some highly relevant emails existed. Defendants offer **no** explanation as to why they allowed the depositions to proceed without providing this discovery, only that Defendants advised Plaintiff that they were continuing to search materials that may be responsive. Even when deponent Jason Adkins testified that their were emails, and that he had given them to counsel, counsel stood silent. The Court finds that this "impedes, delays, or frustrates the fair examination of the deponent," and warrants sanctions under Federal Rule of Civil Procedure 30(d)(2).

The Court finds that an appropriate sanction for this conduct is, first and foremost, making all of these witnesses available for a second deposition. Second, Defendants shall pay all reasonable expenses for these new depositions, including attorneys' fees and five hours of preparation time per attorney. Further, Defendants shall pay all reasonable expenses, including attorneys' fees, for the prior depositions, which they impeded, delayed, and frustrated by allowing them to occur without turning over relevant discovery for use at the depositions. Defendants shall make all the witnesses available for examination within thirty days of the date of this Order, and shall make them available at Plaintiff's counsels' Wheeling, West Virginia office.

*2. The Seven*

These employees are Mark Hrutkay, Gregg Dixon, David Kelly, Kurt Salvatori, Tracy O'Lare, Eric Fergus, and Joanne Bafralli. Plaintiff contends that these employees' roles did not become apparent until after he reviewed a May 29 "document dump" consisting of three banker's boxes of documents. Accordingly, Plaintiff wants permission to exceed the deposition limit and depose these individuals at Defendants' expense. The Court finds that Plaintiff has shown good cause to exceed the deposition limit, but will not require Defendants to pay the costs of examination. First, although Plaintiff contends that these employees' involvement in his termination did not become apparent until the recent discovery production, half of these individuals were disclosed in Defendants' Rule 26 initial disclosures. (*See* CM/ECF Doc. 48, Ex.1.) Further, Plaintiff surely had personal knowledge of some of the main actors, which he could have relayed to counsel. Finally, Plaintiff made the strategic choice not to depose some of the individuals. Thus, although Plaintiff has certainly shown good cause to exceed the deposition limit, there is not enough to warrant imposing sanctions on Defendants.

**C. Further Discovery by Defendants**

Plaintiff wants the Court to prohibit Defendants from conducting any further discovery in this action. Although it is not set out in their response, the Court has reviewed the transcript of the hearing held before Judge Stamp on July 17, 2013, and has surmised that Defendants want to conduct only the following limited discovery: (1) redeposing Plaintiff about a previously filed employment discrimination case, which only came to light after recent discovery provided by Plaintiff; (2) deposing Plaintiff's narcotics anonymous sponsor, who Defendants claim was only recently revealed during Plaintiff's deposition; (3) depose Devon Cummings, Plaintiff's physician at the Veteran Affairs Hospital; and (4) obtain Plaintiff's medical records from, and depose, Dr. Midcap, who was only recently revealed in errata to Plaintiff's deposition as a treating physician.

First, Plaintiff's narcotics anonymous sponsor was disclosed in his Rule 26 initial disclosures as

9

a potential witness. Defendants never attempted to find out who he was, interview him, or depose him. Accordingly, they have forfeited the right to now depose him. With regard to the other discovery requests, these are all requests relating to information only recently revealed, mostly through Plaintiff's late May 2013 deposition. Thus, Defendants may conduct discovery into only those three limited areas outlined above.

**D. Reasonable Expenses, Including Attorneys' Fees**

The Court finds that reasonable expenses, including attorneys' fees, may be recovered for the prosecution of this motion. *See e.g. Basch v. Westinghouse*, 777 F.2d 165 (4th Cir. 1985) (finding that it is not an abuse of discretion to assess reasonable expenses, including attorneys' fees, for the filing of a motion for sanctions). Accordingly, Plaintiff is **ORDERED** to submit an affidavit outlining in detail the reasonable expenses, including attorneys' fees, associated with the prosecution of the instant motion. The affidavit shall be submitted with the other affidavits regarding expenses with the prior and future depositions. After the Court is in receipt of those affidavits, it will give Defendants' an opportunity to be heard on the expenses.

**III. CONCLUSION**

The Court need not invoke its inherent powers to control the discovery process because the Federal Rules of Civil Procedure provide adequate sanctioning power to punish the instant conduct and deter future conduct of the same nature. For the reasons more fully discussed above, the Court:

1. **RECOMMENDS** that the motion for sanctions, as far as it requests default judgment, be **DENIED**.

2. **GRANTS IN PART AND DENIES IN PART** the remainder of the motion for sanctions.

In particular, the Court **GRANTS** the following relief. (1) All reasonable expenses incurred during

the depositions of Mark Courtney, Ken Harvey, Roger King, Mike Sikora, Jonathan Pritts, and Jason Adkins; (2) Permission to redepose these six individuals at Defendants' expense, including five hours of preparation time for the depositions; (3) permission to exceed the deposition limit and depose Mark Hrutkay, Gregg Dixon, David Kelly, Kurt Salvatori, Tracy O'Lare, Eric Fergus, and Joanne Bafralli. Plaintiff shall bear the cost of these depositions; and (4) reasonable expenses, including attorneys' fees, associated with the cost of the instant motion. Defendants are **ORDERED** to make the witnesses available for deposition within thirty (30) days of the date of this Order. Plaintiff is **ORDERED** to submit an affidavit detailing all reasonable expenses, including attorneys' fees, within sixty (60) days of the date of this Order.

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's request to preclude Defendants from taking further discovery. In particular, Defendants will only be able to conduct the following discovery: (1) redeposing Plaintiff only regarding a previously filed employment discrimination suit; (2) deposing Plaintiff's VA doctor, Devon Cummings; and (3) securing medical records from, and deposing, Plaintiff's current treating physician, Dr. Midcap. The Court **DENIES AS MOOT** Plaintiff's motion as it requests the exclusion of Plaintiff's deposition during trial or in any further motions filed with the Court. Further, Plaintiff's request that the Court preclude Defendants from any effort seeking to prolong this litigation is **DENIED AS MOOT** per Judge Stamp's Order denying Defendants' motion to modify the Scheduling Order.

The Clerk is directed to transmit a copy of this Order to all counsel of record.

**IT IS SO ORDERED**

DATED: August 13, 2013                 /s/ *James E. Seibert*
                                       JAMES E. SEIBERT
                                       UNITED STATES MAGISTRATE JUDGE